THOMAS T. WELDIN and EMMA M. WELDIN *vs.* THE MAYOR AND COUNCIL OF WILMINGTON.

*Case Stated—Statute ; Construction of—Board of Water Commissioners of Wilmington—Power to Purchase Real Estate for Reservoir and Pay for the Same out of the Income from Water Works in their Hands.*

Under the act entitled "An Act to establish a Board of Water Commissioners for the City of Wilmington, and for other purposes," passed at Dover April 18, 1883, being *Chap. 205, Vol. 17, Del. Laws,* the said Board of Water Commissioners has power to purchase real estate to be used for the construction of a new reservoir for said city, and to pay for the same from the income, receipts and rents of the water works in the hands of said board.

(<em>February 15, 1902.</em>)

LORE, C. J., and SPRUANCE and GRUBB, J. J., sitting.

*William S. Hilles* and *John P. Nields* for plaintiffs.

*Herbert H. Ward* and *Robert G. Harman* for defendant.

Superior Court, New Castle County, February Term, 1902.

CASE STATED (No. 161, November Term, 1901).

GRUBB, J., delivering the opinion of the Court:

The material facts disclosed by the case stated are as follows:

On and prior to November 20, 1901, Alfred Betts, Joseph P. Pyle and James P. Jones constituted, and now constitute, the Board of Water Commissioners for the City of Wilmington, as provided by Chapter 205, Vol. 17, Laws of Delaware, and the supplements and amendments thereto.

The bonds authorized or referred to by Section 12 of said act, amounting to $180,000, were issued and the proceeds thereof expended as provided in said act, and no portion thereof is now, or since about 1889 has been, in the possession of said board.

Said Board of Water Commissioners, pursuant to a resolution passed for that purpose, have signed a paper writing, bearing date November 20, 1901, together with the plaintiffs, Thomas T. Weldin and Emma M. Weldin, his wife, looking to the purchase, in the name of the Mayor and Council of Wilmington, of eighty-eight acres of real estate, to be used by said board for the construction of a new reservoir for said City of Wilmington, a copy of which is made part of the case stated, but it is agreed that the making said paper such part thereof shall not admit the power of said board to

NOTE.—At an adjourned session of the Supreme Court held at Dover October 30, 1902, consisting of Chancellor Nicholson and Associate Judges Pennewill and Boyce, the judgment of the Court below in the above entitled cause was affirmed; the Chancellor announcing that the said judgment was affirmed upon the grounds presented in the majority opinion of the Court below.

enter into the agreements therein mentioned on behalf of the Mayor and Council of Wilmington.

Said paper writing sets forth that said Weldin and wife are the parties of the first part, and the Mayor and Council of Wilmington, through the agency of said Betts, Pyle and Jones, constituting said board, is the party of the second part thereto; that said parties of the first part agree with said party of the second part, to grant and convey in fee simple, and clear of all liens, encumbrances and taxes, unto the said the Mayor and Council of Wilmington, its successors and assigns, the said eighty-eight "acres of land therein described. It also sets forth that in consideration thereof the said party of the second part, acting through the agency aforesaid, agrees to pay unto said Weldin and wife forty-two thousand dollars—$10,000 thereof upon the execution and delivery of said paper writing, and the further sum of $32,000 on or before March 25, 1902; and upon the execution and delivery of a deed conveying said lands and premises unto said party of the second part as aforesaid, possession thereof to pass to the Mayor and Council of Wilmington upon such delivery.

The case stated further discloses that on and prior to said November 20, 1901, there was, and now is, the sum of $10,000 in hand and deposited to the credit of said board in the city depository, received by the said board as the income, rents and receipts from the water works in said city, but said board on said day had no money to its credit in said depository, or elsewhere, except such as had been derived from said rents, income and receipts of said water works.

Said board has not paid said Thomas T. Weldin and the said Emma M. Weldin, or either of them, the said $10,000, but has refused so to do.

The purchase of said eighty-eight acres of land is, in the judgment of said board, necessary for the purpose of supplying the citizens of Wilmington with an ample daily supply of good and wholesome water.

This suit is instituted for the recovery of said installment of $10,000.

The sole question raised in this case and presented for our consideration is whether said Board of Water Commissioners has power to purchase said land for the purpose aforesaid, and to pay therefor from the income, receipts and rents of the water works in the hands of said board as aforesaid.

The determination of this question requires the careful examination and proper construction of Chapter 205, Vol. 17, Delaware Laws, entitled "An Act to establish a Board of Water Commissioners for the City of Wilmington, and for other purposes," passed at Dover April 18, 1883.

From the earliest establishment of the water works of Wilmington until 1883, its Council had the continuous charge and management of its water supply under the brief and simple charter provision that the Council may pass ordinances "to purchase or erect pumps, or any other apparatus for supplying the citizens with good and wholesome water; to repair and amend the same, and to assess and receive a tax therefor."

Under this provision and the city's general corporate powers to make contracts, and purchase, take and hold real and personal property, the power, during all said period, to purchase and pay for land for water supply purposes out of money in hand, seems to have been exercised without question or further authority. Indeed, the power to borrow money to pay for such real estate seems to have been also exercised until 1843, when, by Chapter 488, Vol. 9, Laws of Delaware, the City Council was prohibited from increasing the debt of the City of Wilmington. Since that date it has been necessary to obtain special legislative authority when requisite to borrow money on the city's credit to pay for any land, etc., procured for its water supply purposes.

Between 1867 and 1883 the Council's management of the water department seems to have become inefficient or otherwise unsatisfactory.

In 1867 the General Assembly, by Chapter 173, Vol. 13, authorized the Chief Justice and the Chancellor of the State to appoint Water Commissioners to enlarge, improve and extend the Brandywine Water Works, with corresponding discretionary powers to buy land, build reservoirs, borrow money, etc.  But owing to the difficulty of securing suitable commissioners this act was unexecuted, and subsequently repealed.

Again, in 1877, the further construction of the Cool Spring Reservoir was taken from the control of the Council and its completion entrusted to special commissioners appointed by act of Assembly.

Finally, whilst the present revised charter of Wilmington, enacted April 13, 1883, was on its passage, the above mentioned ancient provision giving to the Council the charge and management of the city water supply was stricken therefrom, and the Council divested of all authority over the same.

Thereupon, on April 18, 1883, the statute now in question, establishing and empowering the present Board of Water Commissioners, was enacted, the first members of the board being selected and appointed by the General Assembly itself.

In view of the foregoing conditions and circumstances which led to its enactment, it is reasonable to infer that the General Assembly, which created the board and selected its members, and for the purpose of supplying their predecessors' deficiencies, would entrust it not only with equal discretion and authority, but also with powers commensurate with the more comprehensive and satisfactory results to be attained.

Accordingly, we do not find that said act, in defining the duties and powers of the board, simply provided that it shall have power to "purchase or erect pumps," etc., as in the old charters, or merely declared in general phrase that it shall exercise the powers and perform the duties theretofore exercised and performed by the Council of Wilmington.

On the contrary, the act created a new co-ordinate department

of the city government, charged with the duty of devising and developing a permanent and more efficient system of water works, and clothed with corresponding powers and discretion.

This is clearly shown by the various provisions of the act:

Section 1 is as follows: "The City of Wilmington is hereby authorized, through the agency of a Board of Water Commissioners, hereby created, constituted and appointed, and their successors in office, to take, convey into and throughout said city, the water of the Brandywine river, from any point on said river, or other wholesome water, and may also acquire and hold lands, real estate or personal property necessary for constructing aqueducts, laying pipe, constructing reservoirs, erecting buildings and machinery proper for the said works, and for purifying, conducting, storing and distributing such water, and to purchase, take and hold lands and water-rights for supplying the citizens with good and wholesome water."

Section 7 is as follows: "The said Board shall, with all dispatch, prepare and resolve upon a plan for the permanent water works best suited to the circumstances of the City of Wilmington, capable of affording an ample daily supply for the inhabitants of the city, and may acquire for the City of Wilmington, by contract or otherwise, as hereinafter provided, all such real estate as may be needed for the construction of such extended water works, the title of any real estate so purchased to be vested in the Mayor and Council of Wilmington."

Section 4 provides, *inter alia*, that said Board "shall have control of all matters relating to water supply in the City of Wilmington, or the management and direction of the water works now existing, or hereafter to be constructed in connection therewith; shall have charge and supervision of all the mains, stopcocks, and fire-hydrants and other fixtures appertaining to the distribution of water through the city, and of the collection of all revenues due, or to become due, to the City of Wilmington for water, or accruing to the said city on account of the water works

thereof, in virtue of any ordinances now existing, or of any rules and regulations hereafter to be passed by said Board;" and further that said board, as agent aforesaid for the city, "may, in general, do all things necessary and proper for carrying this act into effect." ·

These plain and positive provisions unmistakably disclose a general legislative intent and purpose to secure for the City of Wilmington, from time to time in the present and future, as its growing area, population and needs require, a sure and ample daily supply of good and wholesome water.

For the adequate fulfillment of this purpose the board is especially enjoined to devise, develop and maintain a permanent and gradually expanding system of water works for the city. To this end the board, by the forgoing express and specific provisions—especially of Sections 1 and 4—and their necessary implications, is clothed with broad plenary powers and discretionary authority to acquire and hold, by purchase or otherwise, real estate and personal property necessary for the construction of reservoirs, etc.' from time to time as occasion shall require, and to pay for the same; and also generally to levy and collect water revenues, and do all things necessary and proper for carrying said act into effect.

Nevertheless, the defendant claims that the provisions of Section 1, authorizing the purchase of real estate, are strictly limited by the more specific subsequent provisions of Section 7.

The defendant accordingly contends that the following clause of Section 7, "the Board may acquire for the City of Wilmington, by contract or otherwise, as *hereinafter provided*, all such real estate as may be needed for the construction of said extended water works," construed in connection with Section 12, is such a limitation of the aforesaid power and authority as prohibits the board from purchasing and paying for any real estate except such only as Section 12 specifically authorized to be purchased and paid for out of the proceeds of the $120,000 of city bonds therein designated and provided.

The entire proceeds of said bonds already having been lawfully expended for other purposes than real estate, as conceded at the argument, the defendant contends that the board cannot now purchase and pay for any real estate for the proposed new reservoir, although the board deems it necessary for the purposes of the act, without first obtaining from the Legislature further special statutory authority to do so.

Section 12 provides as follows: "For the purpose of defraying all the cost of acquiring real estate for reservoirs, laying pipe, purchasing and establishing engines, constructing all the works contemplated by this act, and purchasing water-rights, the City of Wilmington, on the requisition of said Board of Water Commissioners, shall issue bonds" * * * "to an amount not exceeding $120,000, bearing interest not exceeding five and one-half per cent. per annum, and said board may sell and dispose of the same on the most advantageous terms possible," etc.

The defendant claims that said words, "as hereinafter provided," contained in Section 7, refer exclusively to Section 12 only, and that, as Section 12 provides that "for the purpose of defraying *all* the cost of acquiring real estate for reservoirs," * * * the city shall, on the requisition of the Board, issue bonds "to an amount not exceeding $120,000," its said contention is maintained.

In support of this claim the defendant argues that, as "real estate" is the only constituent part of the proposed extended water works, which is specified in Section 7 and not subsequently expressly specified elsewhere in the act except in Section 12, therefore the word "all" in Section 12 restricts the power of the board to purchase and pay for real estate for reservoirs, exclusively to the special mode and limited means of payment provided and prescribed in said Section 12.

But this argument would be more appropriate and forcible if real estate only was expressly specified in Section 12, and "laying pipe, purchasing and establishing engines, constructing all the works contemplated by this act, and purchasing water-rights," were not similarly specified therein.

Section 7 does not in itself contain any such restriction as that claimed by the defendant; but, on the contrary, refers to some later section.  Hence, if it exists at all, it must be found in some subsequent provision of the act.

If the word " all " in Section 12 could properly be held to import any such restriction, it would be because said word is therein incorporated, and it would accordingly, by virtue solely of Section 12 itself, be operative as such restriction upon the power to purchase and pay for not only real estate for reservoirs, but also " engines and water-rights," which are also similarly specified in Section 12. · And this would be so, even if the words " as herein-after provided " had been entirely omitted from Section 7.  The result would be that such a construction of the word " all " in Section 12, if adopted, would, irrespective of Section 7, operate as a limitation upon Section 1 itself, and the plenary discretionary power thereby specifically, or generally, given to purchase water-rights, real estate for reservoirs and engines, because these are all specified in Section 12.

Such a construction of Section 12 would seriously imperil, if not defeat, the plain purpose of the act that the Board should, in obedience to the mandate of Section 7, discharge its duty and have the needful power and authority to plan, construct and provide a permanent and extended system of water works co-extensive with the gradual growth and needs of the city.

This being so, the construction of said word " all," in connec-tion with the residue of Section 12, must be sought which will, if possible, harmonize and not conflict with the general purpose of the act.

*Neary vs. P., W. & B. R. R. Co., 7 Houst., 446; Pickering vs. Day, 3 Houst., 528.*

Section 7 provides that the board " *may* acquire for the City of Wilmington, by contract or otherwise, as hereinafter provided, all such real estate as may be needed for the construction of such extended water works."  But Section 7 does not itself primarily

confer the power to *acquire* real estate. It merely recognizes and reiterates such power which already had been granted in Section 1.

The special purpose of Section 7 was to make it the mandatory duty of the board to suppy the defaults of the Council's former administration of the Water Department by providing a permanent and adequate system of water works for the city.

Whilst it was not absolutely necessary to refer, in Section 7, specifically to real estate, in order to grant the power either to acquire or to pay for it, such power being amply conferred elsewhere in the act as already shown, yet its framers may, from abundant caution and to avoid any question or uncertainty as to the modes and means of payment for that which was so important and indispensable in the construction of said system, have deemed it advisable expressly to refer to such subsequent provisions of the act as relate to the modes and means of defraying the various expenditures on account of the proposed extension, operation and maintenance of said water works system.

So that as neither the power to purchase real estate is granted nor the modes and means of payment therefor are prescribed—but merely referred to—in Section 7, resort must necessarily be had to the sections subsequent thereto for any provisions prescribing such modes and means of payment.

The only subsequent sections which can be held to materially relate to the modes and means of paying for real estate are Sections 12 and 14. Section 12 expressly and specifically relates to the payment for real estate. Section 14 relates to and embraces it, if at all, in language which is general and not specific.

In construing Section 12 it must be observed that Section 7, in providing that the board may acquire real estate " as hereinafter provided",—thereby meaning " to be paid for as hereinafter provided",—does not specifically refer to either Section 12 or Section 14. If both sections can be held to apply to payments for real estate for the purposes of the water works system, then said clause—" as hereinafter provided"—of Section 7, may refer to

both, and not be confined, as claimed by the defendant, exclusively to Section 12.

Again, it will be found upon examination of Section 12 that, whilst it is mandatory upon the *city* to issue the said bonds on the requisition of the board, yet there is no provision in Section 12, or elsewhere in the act, making it mandatory upon the *board* to make such requisition. Consequently, as Section 7 provides that the board *may*—not *shall*—acquire such real estate to be paid for "as hereinafter provided", and as Section 12 did not *compel* the board to make such requisition on the City, it follows that the board might, or might not, in its discretion—so far as Section 7 is concerned—have resorted for such payment to the mode of borrowing money by means of said $120,000 of city bonds as prescribed and limited in Section 12.

As a matter of fact, no real estate has ever been paid for out of said bonds; the proceeds thereof having been applied, prior to 1890, to the other purposes specified in Section 12.

But the defendant, nevertheless, contends that owing to the alleged limitation created by the word "all" in Section 12 itself, irrespective of Section 7, as above stated, the board could not, under this act, purchase and pay for any real estate for reservoirs, excepting out of the said $120,000 borrowed on said bonds, and which has long ago been wholly expended for other purposes.

Such a construction of Section 12 would mean that the intent of the act is that, although it has given the board ample power to raise all needful revenues by water taxes, and notwithstanding the board may have in hand sufficient funds to pay for said real estate, and hence have no need for borrowing money therefor and thus increasing the city funded debt, yet it must do so, or fail—unless it can obtain new legislative authority—to procure real estate which the board, in the exercise of its lawful judgment and discretion, has determined to be really necessary for the mandates and purposes of the act.

It is unreasonable to conclude that the legislative intent was

that the Board should, when it had ample water revenues in hand, borrow money to pay for real estate essential to the fulfillment of the main purpose of the act.

It is both more rational and more consistent with sound canons of construction to hold that the true meaning of Section 12 was that the board might, in its discretion, borrow said money on the city's bonds and credit if it deemed it needful and advisable to do so, provided that the amount thereby raised and applied to the aggregate cost of all or any of the items specified in said section should not exceed $120,000.

Section 12 was enacted in contemplation of and in accord with the following provision of Section 71 of the Wilmington City Charter of 1883: "The funded debt of said city shall not exceed the sum now authorized by law, except as may hereafter be provided by act of the General Assembly, and the said funded debt being so limited, The Mayor and Council of Wilmington, or the Council of Wilmington, shall have no power, or authority, to borrow money, or contract or create any debt or liability, or to make any ordinance for borrowing money or contracting or creating debt or liability, (except ordinary debts and liabilities in the common course of carrying on the work and business of the said city, to be paid out of the taxes, rents or receipts, of the year for the time then current)."

Hence, the purpose of Section 12 was to relieve the board as the agent of the city from this limitation of said charter provision and permit it to borrow money, if it deemed it proper to do so, upon the city's credit, to an amount not exceeding $120,000, for all the purposes specified in said section. It was not a limitation upon the board's power to purchase, but a grant of power to borrow and thus increase the city's funded debt to the extent prescribed and for the purposes specified therein. It related solely to paying with money to be borrowed upon the city's credit, and not to paying with moneys in hand received by the board from the water revenues.

Section 12 was manifestly designed to be a temporary and not a permanent provision ; to limit the money to be borrowed, not the articles to be purchased, and to authorize it to be applied to all or any of them so far as it would reach, according to the judgment of the board respecting its own relative need of each.

Having determined that the temporary provisions of Section 12 impose no limitation upon the present power of the board to purchase and pay for land for reservoirs, it remains for us to consider whether it may purchase and pay therefor from the income, receipts and rents of the water works in the hands of said board in the city depository, under the proper construction of the provisions of Section 14.

The authority of the board to levy and collect water works revenues for the purposes of the act, is primarily granted by implication as necessarily incident to the powers expressly conferred by Section 1, and to the duties imposed by the various provisions of the act—especially of Sections 4 and 7.

Section 14 limits the minimum but not the maximum of this authority, in prescribing that " the water rates shall be fixed by the said Board of Water Commissioners at prices that shall produce revenue sufficient, at least, to pay the interest on the water bonds and the running expenses of the water works."

Section 14 further prescribes " that the whole net income, rents and receipts of said water works, in excess of what may be necessary for completing, constructing, operating and repairing the water works, for extending the water pipes and for interest on water bonds, shall be paid by said board at the end of its fiscal year, to the Council of the City of Wilmington, to be by said Council applied first to the redemption of water bonds, second to the redemption of other city bonds ; but it does not limit the amount of water works revenues which may be raised for said specified water works purposes, for this is left to the lawful discretion of the board.

Section 14 therefore provides, in effect, that only so much of

such net revenues as is not required for said specified water works purposes shall be applied each year on account of such unredeemed bonds, and, consequently, that the net water works revenues annually received by the board shall primarily be applied to said specified " completing, constructing, operating and repairing the water works," etc.

Therefore the pertinent inquiry in the present instance is whether real estate lawfully determined by the board to be necessary for the construction of a reservoir for the purposes of the act is embraced within the legislative meaning and intent of said words " completing, constructing, operating and repairing the water works," etc.

The correct conception of an adequate system of water works for the City of Wilmington—whatever it may have been in the primitive times of borough wells and pumps—now includes, as the act itself in question here discloses, costly aqueducts, reservoirs, filtering plants, engines, pumping machinery, buildings, distributing pipes and all the other instrumentalities of a system of " permanent water works best suited to the circumstances of the city and capable of affording an ample daily supply for its inhabitants," in both the present and future, as contemplated by the act.

None of these aqueducts, reservoirs, filtering plants, engines, etc., can be employed in providing such supply without real estate and personal property, with which and upon which to construct them. Hence, real estate is quite as indispensable a constituent part of the Wilmington water works as the personal property used in their construction.

Said system of permanent water works and its gradual extensions and improvements from time to time, as the growing needs of the city require, as expressly contemplated in Sections 7 and 4, cannot be " constructed " and " completed " without the use of real estate. In fact, Section 7 specifically refers to and regards it as a necessary part of the " construction " of any *extension* of the water works, and Section 1 also specifically and particularly regards it as

*necessary* to be used in "constructing" *reservoirs* as well as other structures therein referred to by name.   It would seem, therefore, that purchasing and paying for real estate for reservoirs is contemplated by the very explicit language and the plain purpose of the act itself, and is included within the meaning and intent of the words "completing and constructing" in said Section 14.

But even in the absence of such clear and specific statutory inclusion, the word "construct" has been held to include authority to purchase and pay for real estate needful for water works.

   *Seymour vs. Tacoma, 6  Wash., 147, 149.*

In that case the Constitution of the State of Washington required that the subject of every statute shall be expressed in its title.   The Legislature of the State had passed an act entitled "An act authorizing cities and towns to construct internal improvements," etc.

Under this statute the City of Tacoma undertook to purchase and pay for the water works of a private water company, including water-rights, lands, etc.   The Supreme Court of the State held that the word "construct" in the title of said act included the purchase of water works and the real estate pertaining thereto, as authorized in the body of the act.

The Court say:   "Ordinarily the meaning of the word 'construct,' in the sense here meant, would be to build or make ; but to give the law any effect whatever it must have been known to the Legislature that more than the mere cost of construction involving the labor necessary would have to be implied.   In building systems of water works especially, the right to take water and the necessary land for reservoirs and buildings for machinery must be looked after.

   "If one should contract with another for the construction of a house, no one would suppose the agreement to 'construct' implied an agreement to furnish the land ; but a gross contract to 'con-

struct ' a system of water works," would be otherwise, as the Court held.

When the Legislature of Delaware incorporated the words " completing, constructing," etc., in said Section 14, they must have had in mind the provisions of Section 7, contemplating a permanent system of water works with gradual extensions and costly improvements, as occasion would require in the future. As the temporary and limited appropriation of $120,000 in city bonds in Section 12 would evidently prove inadequate for such far-reaching and unavoidable needs, the requisite means must of necessity be otherwise provided.

Accordingly said words were incorporated in Section 14 for the purpose, and with the expectation presumably of securing a liberal provision therefor out of the annual revenue of the water works, and also for the redemption of the funded debt of the city.

So far this legislative purpose and expectation have been justified by the results.

The new system created and established by the act of 1883 has been notably successful. Instead of increasing the funded City debt it has greatly diminished it.

It was admitted at the argument that out of its annual revenues, and after paying for needed improvements and running expenses and interest, it has paid the City an aggregate net surplus of $635,000, enough to redeem all the water bond loans unpaid at the time of its creation and establishment, including, since 1890, an average annual net surplus of more than $50,000.

It therefore is able to pay out of its annual revenues the $10,000 now sued for, and probably will be able to pay thereout the entire $42,000 purchase money for the land in controversy, and also, within a few years, the total cost of the construction and completion of the proposed new reservoir to be built thereon.

Under these circumstances, justifying the expectations and showing the wisdom of the Legislature which created and empowered said board, by the act of 1883, it is not reasonable to

conclude that it intended that the board should not, under said act, have the power to purchase land for reservoirs and the other purposes of the act, and to pay therefor out of the water works revenues in its hands, but that it should apply for further legislation specially authorizing it to do so.

There is no evidence that real estate is so sacred that it must be unapproachable, or so unholy that it must be shunned by the board. The superior consideration which was anciently accorded to realty has vanished before the enormous increase of personalty in modern times. In practical experience the cost of reservoirs, aqueducts, filtering plants, engines, pumping machinery and the other instrumentalities of modern water works far exceeds the cost of the real estate used in connection with them.

It seems incredible that the authors of this act intended that the board, although it could purchase personalty without extra authority, and although it had ample revenues in hand for the purchase of the required realty, should nevertheless needlessly expend time, labor and legislative outlays in seeking special authority for that which was of minor, but not for that which was of greater cost.

The construction placed upon this act and its respective provisions by the defendant is too artificial, narrow and impracticable to be tenable. If adopted in practice it would seriously restrict that large discretion, freedom of action and opportunity for uninterrupted methodical development of the water works system which the act has so carefully and plainly entrusted to the Board, and which, so far, have been so successfully employed by it.

Where, upon careful examination of a statute, it clearly appears that a general or particular power, or discretion has been conferred, whether wisely or not, the Court may not either impair or nullify it by any strained or unreasonable construction of its language or provisions. If unwisely conferred, the remedy is within the province of the Legislature, not the Court.

In this suit judgment should be rendered in favor of the plaintiffs for the sum demanded therein, besides costs of suit.

SPRUANCE, J., (concurring):—The right of the plaintiffs to recover in this action depends upon the question whether the defendant corporation, through the agency of its Board of Water Commissioners, has the power to purchase the lands in question, and to pay for the same from the income, rents and receipts of the water works of said corporation in the hands of said board. The solution of this question depends upon the construction to be given to the act entitled, "An Act to establish a Board of Water Commissioners for the City of Wilmington, and for other purposes," passed April 18, 1883, being Chapter 205 of Vol. 17, Laws of Delaware, as amended.

In the construction of said act little aid is to be obtained from the history of the water works of the city, or from former legislation upon the subject.

Prior to the passage of said act the water works of the city had been under the control of the City Council, and said act transferred said control to the said board, but it is not material for the purposes of this case what may have been the former powers of the corporation, or of the City Council, in respect to the acquisition of land to be used in the supply and distribution of water.

Since said last act took effect the City Council has had no power whatever as to the water supply of the city, and the powers of the corporation in this respect, whatever they may be, can be exercised only through the agency of said board, and said board has no powers except those conferred upon it by said act.

The act creating the Board of Directors of the Street and Sewer Department, passed April 20, 1887, Chapter 188 of 18 Laws of Delaware, expressly gave to the corporation, through the agency of said board, the rights and powers in respect to streets, sewers, etc., which were theretofore held and exercised by the Council of the city, but we do not find in the said act establishing the Board of

Water Commissioners, or in any other act, a similar transfer of the rights and powers theretofore held and exercised by the Council in respect to the water supply of the city.

The contract sued upon, while made in the name of the corporation, the Mayor and Council of Wilmington, was so made by and through the agency of said Board of Water Commissioners, and, so far as appears, without the approval or consent of the City Council, or any other department or agency of the corporation. If the said board had the power to make said contract, the plaintiffs may recover thereon, otherwise they cannot, and the power of said board to make said contract, if it exist, must be found within said act of April 18, 1883, as amended.

By Section 1 of said act the city is authorized, through the agency of a Board of Water Commissioners, thereby created, " to take, convey into and throughout said city the water of the Brandywine river, from any point on said river or other wholesome water, and may also acquire and hold lands, real estate or personal property necessary for constructing aqueducts, laying pipe, constructing reservoirs, erecting buildings and machinery proper for the said works, and for purifying, conducting, storing and distributing such water, and to purchase take and hold lands and water-rights for supplying the citizens with good and wholesome water."

Here we have conferred upon said city, by the agency of said board, the fullest power to acquire, hold and use real and personal property for the supply of water to the citizens of said city, and if this power is not limited or qualified by any other provision of said act, or by some other act, the said board had full power to make the contract sued upon.

It is contended on behalf of the defendant that such limitations or qualifications are to be found in Sections 7, 12 and 14 of the said act.

Said Section 7 is as follows:

" The said Board shall, with all despatch, prepare and resolve:

upon a plan for the permanent water works best suited to the circumstances of the City of Wilmington, capable of affording an ample daily supply for the inhabitants of the city, and may acquire for the City of Wilmington, by contract or otherwise, as hereinafter provided, all such real estate as may be needed for the construction of such extended water works, the title of any real estate so purchased to be vested in the Mayor and Council of Wilmington."

The material parts of said Section 12 are:

" For the purpose of defraying all the cost of acquiring real estate for reservoirs, laying pipe, purchasing and establishing engines, constructing all the works contemplated by this act and purchasing water rights, the City of Wilmington, on the requisition of said Board of Water Commissioners, shall issue bonds " * * * " to an amount not exceeding one hundred and twenty thousand dollars " * * * " the said sum of one hundred and twenty thousand dollars shall be in addition to, and exclusive of, the sum of sixty thousand dollars authorized to be borrowed for the purchase of water rights for said city."

The material parts of said Section 14 are:

" The water rates shall be fixed by the said Board of Water Commissioners at prices that shall produce revenue sufficient, at least, to pay the interest on the water bonds and the running expenses of the water works," * * * " and the whole net income, rents and receipts of said water works, in excess of what may be necessary for completing, constructing, operating and repairing the water works, for extending the water pipes and for interest on water bonds, shall be paid by said Board, at the end of its fiscal year, to the Council of the City of Wilmington."

Section 7 imposed upon said Board the duty of preparing and executing, with all despatch, a plan for permanent water works, capable of affording an ample supply of water; but there is here no indication that when said duty had been performed, the powers of the Board in respect to the enlargement and extension of said water

works should cease, or that it could not thereafter make such changes and additions to said water works as the growing needs of the city might require.

The provision giving to said Board the power to acquire, as thereinafter provided, real estate for water works, evidently refers to the mode of payment for the same, but there is no reason to limit such payment to a particular fund, unless such limitation is found in some subsequent provision of the statute.

The manifest purpose of Section 12, was to authorize an increase of the city debt in excess of the limit imposed by the act of February 25, 1843, Chapter 488-9, Laws of Delaware, and the several amendments thereof, and to direct the purposes to which the money realized from the loan should be applied. It could not have been the purpose of said section to prohibit the application of the ordinary net income of the Department to the objects to which the proceeds of said loan were devoted, as this would not only prevent the expenditure of such income for "acquiring real estate for reservoirs," but would also prevent its expenditure for laying pipe, purchasing and establishing engines, constructing the works contemplated by said act, and purchasing water rights.

It is unreasonable to suppose that the Legislature intended that after the money arising from said loan had been expended for the purposes specified in said Section 12, the said Board should have no power to expend any more money for the same purposes, however necessary said expenditure might be and however large might be the sum of money in their hands from water rents in excess of the amount required to pay the interest on the water bonds and the running expenses of the water works.

Under the provisions of Section 14, until the amounts necessary for completing, constructing, operating and repairing the water works, extending water pipes and paying the interest on the water bonds have been deducted, there can be no excess of income to be paid to the City Council.

The power given to said board by said Section to apply the income of the water works to completing and constructing the water works, carries with it the power to apply such income to the acquisition of such real estate as may be necessary for completing and constructing said water works.

By the case stated it is agreed that the said tract of land is intended to be used by said board for the construction of a new reservoir for said city; that there is in the hands of the board more than sufficient money for the payment of the amount claimed in this action, received by the board as income from the water works of the city; and that the purchase of said land is, in the judgment of the board, necessary for the purpose of supplying the citizens of said city with an ample daily supply of good and wholesome water.

Whatever may be our impressions as to the expediency of the purchase at this time of so large a tract of land for water purposes, or as to the price proposed to be paid for the same, we have not before us the facts upon which could be formed a definite opinion on the subject. But in addition to this, if the Legislature has committed to said board the discretion as to the purchase of real estate for water purposes, and if, as is admitted, there has been a *bona fide* exercise of that discretion by said board, we have no right to interfere. The only question before us is as to the power of the board in the premises.

Finding no limitation or qualification of the ample power to purchase real estate necessary for constructing reservoirs, etc., conferred upon said board by said Section 1, and nothing to prevent the payment for such real estate out of the income of the water works in the hands of the board, I am of the opinion that judgment should be rendered in favor of the plaintiffs for the amount payable to them upon the execution and delivery of said contract.

LORE, C. J., (dissenting):

The case stated sets out substantially that the Board of Water

Commissioners of the City of Wilmington have agreed, in a paper writing dated November 20, 1901, to purchase of Thomas T. Weldin and wife 88 acres of land in Brandywine hundred, to be used by the said Board of Water Commissioners "*for the construction of a new reservoir* for the City of Wilmington." That the purchase of the said land *is in the judgment of the said board of Water Commissioners necessary* for the purpose of supplying the citizens of the city with an ample supply of good and wholesome water.

The consideration for the said land is $42,000; $10,000 of which was to be paid on the date of the above agreement, November 20, 1901; the remaining $32,000 on or before March 25th, 1902. That on November 20, 1901, the said board had in hand upwards of $10,000, received by them as income, rents and receipts from the water works of the city.

The question submitted to the Court is, whether "the said Board of Water Commissioners had power to purchase the said land for the purpose aforesaid, and to pay therefor from the income, receipts and rents of the water works" in the hands of the said board.

The three commissioners having decided in their own minds that 88 acres of land in Brandywine Hundred are necessary for a new reservoir, and having resolved to purchase the same, the question baldly is, have they the right to make such purchase and pay for it out of the income of the city water works.

The question is clean-cut, and its solution must be had within the four corners of the act of April, 1883, creating the Board of Water Commissioners; which act, it was conceded in the argument on both sides, is the source and measure of all the powers of the Board.

No learned display of water-works history; no application of judicial pigment can aid in reaching a correct conclusion; however interesting and soothing they may be as matters of history and comity.

Let us group together the express provisions of the statute relating to the purchase and payment of land.

Section 1 provides that the Board *"may also acquire and hold lands, real estate"* or personal property, necessary for constructing aqueducts, laying pipe, constructing reservoirs, erecting buildings and machinery proper for said works, and for purifying, conducting, storing and distributing such water, and to purchase and take and hold *lands and water rights* for supplying the citizens with good and wholesome water."

" SECTION 7.    The said Board shall, with *all dispatch,* prepare and resolve upon a *plan for the permanent water works* best suited to the circumstances of the City of Wilmington, capable of affording an ample daily supply for the inhabitants of the city, and may *acquire* for the City of Wilmington, *by contract or otherwise,* as hereinafter provided, *all such real estate* as may be needed for the construction of such extended water works."

" SECTION 12.    For the purpose of defraying *all the costs* of acquiring real estate for reservoirs, laying pipe, purchasing and establishing engines, constructing all the works contemplated by this act and purchasing water rights," the City of Wilmington was authorized to borrow money on bonds to the extent of $120,000, in addition to $60,000 on hand under a former act.

While Section 12 is manifestly a limitation upon the debt of the city, it is also equally a mode of paying for all lands for water works, and the only mode expressed in the act.

Compactly, then, Section 1 clothes the Board of Water Commissioners generally with power to acquire, purchase, take and hold lands and real estate for water works.

SECTION 7 provides that " *all* such real estate as may be needed for the construction of such extended water works, may be acquired

by contract or otherwise, as hereinafter provided." It is thereinafter provided as follows:

"SECTION 12. For the purpose of defraying *all the costs* of acquiring real estate for reservoirs," etc., bonds shall issue.

These being the only express provisions of the statute relating to the acquisition of land, the power would seem not to be in the Board to acquire land in any other manner than as so expressed; unless there is within the terms of the statute some other implied mode.

The manner of payment when expressed in the power to acquire land is an indispensable element of such power; and the power cannot be exercised without complying with such manner of payment.

It is broadly claimed by the plaintiff that the power to purchase land implies the power to pay for it. As a naked proposition this is true; but when the mode of acquiring and the mode of paying therefor are specifically set out in the instrument giving the power that mode must be followed, as it limits the right to purchase.

Thus it will be seen that the power to pay for the land out of the income receipts and rents of the water works is nowhere contained in the express terms of the statute, but on the contrary is negatived by them.

But if there was a doubt upon this point, under the express provisions of the statute heretofore cited, the disposition of such income by the express terms of the act itself would be conclusive.

It is provided by Section 14 as follows:

"The water rates shall be fixed by the said Board of Water Commissioners at prices that shall produce revenue sufficient, at least, to pay *the interest on water bonds and the running expenses of the water works;* provided, that in no case shall a dwelling house, having one hydrant in the yard or kitchen, or both, be charged more than five dollars, and the whole net income, rents and receipts of said water works in excess of what may be necessary for com-

pleting, constructing, operating and repairing the water works, for extending the water pipes and for interest on water bonds, shall be paid by said Board, at the end of its fiscal year, to the Council of the City òf Wilmington," for the payment of the bonded debt of the city.

Here is an express designation of all the purposes for which the income, rents and receipts of the water works may be used, viz:

*First,* for "completing, constructing, operating and repairing the water works."

*Second,* " for extending the water pipes."

*Third,* "for interest on water bonds." ·

*Fourth,* for payment of city bonded debt.

The words "completing, constructing, operating and repairing the water works" manifestly refer to the superstructure; that which is placed in or upon the land; that is, the building or plant; the water works proper, as distinguished in Section 1 of the act, and for the completion and construction of which the Board is authorized to acquire and hold land.

It would seem to be juggling with words to hold that the power to buy land and to pay for it, can be reasonably extracted or implied from any one of these express purposes. They are fitly grouped together and designated earlier in the Section as "running expenses of the water works."

We see, therefore, that the mode of acquiring land and paying for it is not only expressly provided for in the sections of the act heretofore quoted; but that Section 14 expressly excludes such purchase from the purposes for which the income of the water works may be used.

If the power so to buy and pay for the land is not vested

in the Board under the statute, no inconvenience resulting there-
from may confer such power.

But no embarrassment in fact appears, for Section 14 seems to
remove all the restrictions of Section 12, and to confer upon the
Board all needed powers other than that to purchase and pay for
land.

In the case stated no such embarrassment is even suggested.

It should be noted also that it does not appear that the pro-
posed reservoir is "in pursuance of a plan for the permanent
water works" which the board was required to prepare and re-
solve upon with all dispatch by Section 7 of the act. It is simply
and baldly stated that the reservoir is necessary in the judgment of
the Board, and that they have resolved to purchase the land.

These further considerations occur, as bearing upon the case.

The act of April 18, 1883, now over eighteen years ago, took
the control of the water works, which then consisted of the pump-
ing stations and water rights on the Brandywine, the land and
reservoirs at Eighth and Clayton streets, and the ample grounds of
the Cool Spring Reservoir and park, containing nearly four squares
of ground, from the City Council, because of incompetent manage-
ment and abuse, and vested it in a Board of Water Commissioners,
consisting of three members.

By Section 12 of the act there was provided a fund of
$180,000, any or all of which might have been used to purchase
and pay for land, in the discretion of the Board. But so ample
seems to have been the supply of land, that it was admitted in the
argument of this case that no part of this amount was actually
used for the purchase of land. This condition was doubtless
known to the Legislature. Within the land already possessed,
and such as might be bought with the $180,000 above named, the
act has manifestly confined the "completing, constructing, operat-
ing and repairing the water works" by the Board; presumably

also the plan for permanent water works prescribed by Section 7 of the act, early in these eighteen years was prepared, and has been carried into execution therein.

Now, a new departure is projected. A farm of eighty-eight acres in Brandywine Hundred for a *new* reservoir is now bargained for, and a new system is to be commenced, which may reasonably run into a million dollars of expense if the contemplated works to be erected on the land so bargained for shall bear a reasonable proportion to the acreage of the land. It is urged that this purchase may be made, in the discretion of the board, upon their judgment of its necessity without any application to the Legislature, so that the measure may be ventilated and the citizens of Wilmington be given an opportunity to be heard.

It appears that the Legislature has carefully guarded the citizens by limiting in Section 12 the amount of debt that may be incurred by bonding the city for the water works. On the other hand, from the plaintiffs' contention it would appear that the Legislature had thrown wide open the door of taxation of such citizens as pay water rent in permitting the board to buy lands in their discretion, and to levy water rents in their discretion, however onerous—saving only houses having one hydrant—and to apply such water rents to pay for such land. It seems improbable that the Legislature would vest any such arbitrary and unlimited power in any board of commissioners, however excellent they might be.

Moreover, if such power is given to the board, then Section 12 of the act is entirely unnecessary, as under that power the board might levy and collect by water rents all the money that they might want to build reservoirs in their discretion without borrowing at all.

But manifestly the Legislature in Section 14 have directed the board to pay all the excess over running expenses proper and interest on the bonds back again into the city treasury for the payment of the city debt, and does not permit them to invest such water rents in the purchase of land.

This purchase of land is a broad departure from the policy indicated by the statute, and is fraught with great danger. The act indicates that in entering into a new and large purchase of real estate that the board should apply to the Legislature, so that the necessity for such new departure might be freely and fully discussed and understood by the citizens. Manifestly such power is not left simply to the judgment and resolution of any three men who for the time being may be members of the Board of Water Commissioners.

After the most careful consideration of the exceedingly able and exhaustive arguments of the counsel on both sides, and a thorough examination of the statute, I have been able to reach no other conclusion than that the power to buy this land and pay for it out of the income, rents and receipts of the water works is not vested in the Board of Water Commissioners, and that in this case judgment should be entered for the defendant for costs.